UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| KEVIN F. BLACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 4:05-CV-0051-JDT- |
| | ) | WGH |
| WOLPOFF & ABRAMSON, LLP; | ) | |
| BRUCE H. CHERKIS; MIDLAND | ) | |
| CREDIT MANAGEMENT, INC.; | ) | |
| AND MRC RECEIVABLES | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants, Wolpoff & Abramson, LLP, its employee, Bruce H. Cherkis, (collectively "Wolpoff"), Midland Credit Management, Inc. ("Midland") and MRC Receivables Corporation ("MRC"), by their attorneys of record Tomio B. Narita, Jeffrey A. Topor and James W. Riley, Jr., and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move this Court for an Order dismissing the complaint filed in this action by plaintiff Kevin F. Black ("Black") for failure to allege facts sufficient to constitute a valid cause of action.

# TABLE OF CONTENTS

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   THE ALLEGATIONS OF THE COMPLAINT . . . . . . . . . . . . . . . . . . . . . .  3

III.  ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    A.   Count One Of The Complaint Must Be Dismissed,
        Because Black Has Completely Failed To Allege
        Any Facts That Would Support A Violation Of
        The FDCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

        1.   Conduct Allegedly Occurring Outside The
            One-Year Statute Of Limitations Cannot
            Support An FDCPA Claim . . . . . . . . . . . . . . . . . . . . . . . . .  6

        2.   The Court Evaluates The Purported FDCPA
            Claim Using The Unsophisticated Debtor
            Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

        3.   As A Matter Of Law, The Unsophisticated
            Debtor Would Not Believe That The
            May 6, 2004 Letter From Wolpoff Contained
            An Implied Threat Of Legal Action . . . . . . . . . . . . . . . . . . .  9

        4.   Midland's Alleged Failure To Stop Collection
            Activity Does Not Constitute An Unfair Or
            Unconscionable Practice Under Section 1692f
            Of The FDCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

        5.   Midland and MRC Are Not Vicariously Liable
            For Wolpoff's Alleged FDCPA Violations . . . . . . . . . . . .  14

    B.   Count Two Of The Complaint Must Be Dismissed
        Because Black Has Not Alleged Facts Sufficient To
        Constitute A Violation Of The FCRA . . . . . . . . . . . . . . . . . . . . . .  16

i

1.     There Is No Private Right of Action Under
       The FCRA Based On Midland's Alleged
       Failure To Report Accurate Information To
       A Credit Reporting Agency . . . . . . . . . . . . . . . . . . . . . . . . 16

2.     Black Has Not Plead Facts Sufficient To
       State A Claim Against Midland For Failure
       To Investigate A Dispute Under Section
       1681s-2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3.     The FCRA Claim Against Wolpoff Fails,
       Because Wolpoff Had A Permissible
       Purpose For Obtaining Black's Credit
       Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4.     Midland And MRC Are Not Vicariously
       Liable For Wolpoff's Alleged Violations
       Of The FCRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

C.     The "Invasion Of Privacy" Claim Must Be Dismissed,
       Because Black Has Not Alleged An Intrusion Into
       His Physical Space . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Agosta v. Inovision, Inc.*,
2003 WL 22999213 (E.D. Penn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Aklagi v. Nationscredit Fin. Servs. Corp.*,
196 F. Supp. 2d 1186 (D. Kan. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Breese v. Triadvantage Credit Servs., Inc.*,
2005 WL 300074 (D. Minn. Feb. 2, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Carriere v. Proponent Fed. Credit Union*,
2004 WL 1638250 (W.D. La. July 12, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Centers v. Centennial Mortgage*,
398 F.3d 930 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Duncan v. Handmaker*,
149 F.3d 424 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Durkin v. Equifax Check Servs., Inc.*,
406 F.3d 410 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

*Edge v. Professional Claims Bureau, Inc.*,
64 F. Supp. 2d 115 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24

*Elmore v. North Fork Bancorp.*,
325 F. Supp. 2d 336 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

*Fox v. Citicorp Credit Servs., Inc.*,
15 F.3d 1507 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gammon v. GC Servs.*,
27 F.3d 1254 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gonzales v. Ocwen Fin. Servs.*,
2003 WL 23939563 (N.D. Cal. Dec. 2, 2003) . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Gordon v. Greenpoint Credit*,
266 F. Supp. 2d 1007 (S.D. Iowa 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Jang v. AM Miller*,
122 F.3d 480 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jones v. Federated Fin. Reserve Corp.*,
144 F.3d 961 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Kane v. Guaranty Residential Lending, Inc.*,
2005 WL 1153623 (E.D.N.Y. May 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Kodrick v. Ferguson*,
54 F. Supp. 2d 788 (N.D. Ill. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lekas v. Briley*,
405 F.3d 602 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Morgovsky v. Creditors Collection Serv. of San Francisco*,
1995 WL 316970 (N.D. Cal. May, 16, 1995) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Nelson v. Chase Manhattan Mortgage Corp.*,
282 F.3d 1057 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Newman v. Checkrite Cal., Inc.*,
912 F. Supp. 1354 (E.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Peasley v. Verizon Wireless (VAW) LLC*,
364 F. Supp. 2d 1198 (S.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Perretta v. Capital Acquisitions & Management Co.*,
2003 WL 21383757 (N.D. Cal. May 5, 2003) . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

iv

*Pettit v. Retrieval Masters Creditors Bureau, Inc.*,
211 F.3d 1057 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Phillips v. Grendahl*,
312 F.3d 357 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 24

*Robinson v. American Honda Fin. Corp.*,
2005 WL 1009568 (W.D. Tenn. Mar. 31, 2005) . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Smith v. Sears, Roebuck and Co.*,
276 F. Supp. 2d 603 (S.D. Miss. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Spearman v. Tom Wood Pontiac-GMC, Inc.*,
2002 WL 31854892 (S.D. Ind. Nov. 4, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stafford v. Cross Country Bank*,
262 F. Supp. 2d 776 (W.D. Ky. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

*Stonehart v. Rosenthal*,
2001 WL 910771 (S.D.N.Y. Aug. 13, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sturdevant v. Jolas*,
942 F. Supp. 2d 426 (W.D. Wis. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Velliard v. Mednick*,
24 F. Supp. 2d 863 (N.D. Ill. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wadlington v. Credit Acceptance Corp.*,
76 F.3d 103 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*White v. Goodman*,
200 F.3d 1016 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Yohay v. City of Alexandria Employees Credit Union, Inc.*,
827 F.2d 967 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Young v. Equifax Credit Information Servs., Inc.*,
294 F.3d 631 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

v

## STATE CASES

*Cullison v. Medley*,
570 N.E.2d 27 (Ind. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## FEDERAL STATUTES

15 U.S.C. § 1681 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. § 1681a(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

15 U.S.C. § 1681b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

15 U.S.C. § 1681b(a)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

15 U.S.C. § 1681b(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15 U.S.C. § 1681n . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

15 U.S.C. § 1681n(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

15 U.S.C. § 1681o . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

15 U.S.C. § 1681s-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

15 U.S.C. § 1681s-2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

15 U.S.C. § 1681s-2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

15 U.S.C. § 1681s-2(d)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

15 U.S.C. § 1692 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. § 1692(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. § 1692(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

15 U.S.C. § 1692f(1-8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 U.S.C. § 1692k(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Federal Rule of Civil Procedure 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 27

## I.    <u>INTRODUCTION</u>

In this action, Black seeks to recover damages and attorneys' fees from the defendants based upon their legitimate efforts to recover the undisputed balance due on Black's unpaid credit card debt.  In August 2003, Midland sent Black a letter, which offered to settle his outstanding debt with MRC for one half of the total amount due.  Midland's letter, which is attached as Exhibit 1 to the complaint, informed Black that *if* he paid Midland $611.44 by October 12, 2003, then Midland would notify the credit bureaus that his debt was "Paid" and stop further recovery activity.  Admittedly, Black did not comply with the terms of the offer.  Although Black alleges that he "tendered" the payment to Midland, it was apparently sent late and therefore was not received by Midland until after the stated deadline.  Midland properly credited the amount of the payment to Black's outstanding balance and continued its collection efforts with respect to the remaining balance.

Later, when Black refused to pay, Midland referred the debt to its attorneys at Wolpoff for further collection efforts.  Wolpoff allegedly pulled a copy of Black's credit report, and then sent Black a collection letter requesting that he pay the remaining balance.  In response, Black filed this action, alleging that Midland, MRC and Wolpoff violated the Fair Debt Collections Practices Act, 15 U.S.C. §§

1

1692, et seq. ("the FDCPA"), and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq.  ("the FCRA").

As demonstrated herein, Black has completely failed to allege any facts sufficient to constitute a valid claim for relief against the defendants.  The allegations of the complaint and the contents of Exhibit 1 thereto demonstrate, as a matter of law, that Black failed to comply with the terms for accepting Midland's offer to settle the debt for 50% of the balance due.  Accordingly, Midland was not obliged to report the debt as "Paid" to the credit bureaus, and it was proper for Midland to continue its collection efforts with respect to the remaining balance. Midland and MRC did not violate the FDCPA or the FCRA.  In addition, as a matter of law, consumers like Black may not maintain a private right of action under the FCRA against alleged furnishers like Midland or MRC based upon the alleged reporting of inaccurate information to the credit bureaus.

Nor is there any basis for imposing liability on Wolpoff.  The allegations of the complaint reveal that Wolpoff was engaged by "Midland and/or MRC" to collect the unpaid balance of the debt.  Thus, as a matter of law, Wolpoff had a permissible purpose under the FCRA for obtaining and using Black's credit information.  Wolpoff's letter, which is attached as Exhibit 2 to the complaint, does not violate the FDCPA as a matter of law because it does not state or imply

2

that any Wolpoff attorneys are licensed to practice law in Indiana, nor does it state or imply that Wolpoff intended to sue Black to recover the balance owing.

Even assuming that all allegations of the complaint are true, Black has still failed as a matter of law to allege facts sufficient to state a claim for relief.  The motion to dismiss should be granted.  The entire action should be dismissed.

## II.   THE ALLEGATIONS OF THE COMPLAINT

The complaint alleges that Black received a letter from Midland in August 2003 regarding a $1,288.22 debt that Black allegedly owed to MRC.  *See* Complaint ¶ 13 and Ex. 1.[1]  In the letter, Midland offers to settle Black's indebtedness for only 50% of the total balance due, if Black pays Midland the sum of $644.11 by October 12, 2003.  *Id.*  The letter states that if Midland receives the payment by that date, then Midland will notify the credit bureaus that the debt is "Paid" and Midland will immediately stop all recovery activity on the account.  *Id.* The letter further states that to accept the offer, Black must mail the payment to Midland so that it is received by October 12, 2003, and it suggests that he mail the payment by October 5, 2003.  *Id.*

---

[1]  Although Black alleges he received the letter from Midland "on or about August 26, 2003," defendants note it is actually dated August 28, 2003.  *See* Complaint, Ex. 1. Defendants further note that Exhibit 1 states that there is "Important Information" on the reverse side of the letter, but Black has not attached a copy of the reverse side of the letter to the complaint.

Notably, Black does <u>not</u> allege that he actually complied with the terms of the offer by delivering the $644.11 payment to Midland on or before October 12, 2003.  Rather, he alleges only that he "tendered" $644.11 to Midland – with no reference to when he "tendered" it – and that Midland allegedly "accepted" that payment on or about October 20, 2003.  Complaint ¶ 14.  Black then alleges that, notwithstanding Midland's alleged "acceptance" of the sum he had tendered, Midland allegedly "refused to comply with its agreement and promise" as set forth in Exhibit 1 to the complaint "that it would notify the credit bureaus that the debt was 'paid' and immediately stop collection activity."  *Id.* ¶ 15.

The complaint also alleges that at some point between October 20, 2003 and May 6, 2004, Midland and/or MRC retained Wolpoff to collect the balance of the debt.  *Id.* ¶ 16.  On May 6, 2004, Wolpoff sent Black a letter (the "May 6, 2004 letter") advising him that he still owed MRC $681.84, which was the balance of the debt (plus accrued interest) after crediting Black's earlier payment of $644.11.  *Id.* ¶ 17 and Ex. 2.[2]

The May 6, 2004 letter does <u>not</u> state that Wolpoff employs attorneys who are licensed to practice law in the State of Indiana.  *Id.*, Ex. 2.  Nor does it state

---

[2]  Once again, defendants note that Exhibit 2 recites that there is an "Important Notice" on the reverse side of the letter, but Black has not attached a copy of the reverse side of the letter to the complaint.  *Id.*

4

that Wolpoff or MRC intended to initiate litigation to collect the balance from Black.  *Id.*  There is <u>no</u> reference in the letter to any post-judgment remedies that MRC might be entitled to pursue, such as garnishments or attachments.  *Id.* Despite this, Black asserts that he "feared" he would be sued by Wolpoff, that it would obtain a judgment against him, and that it would attach, seize or garnish his wages and/or bank account or other assets.  *Id.* ¶ 20.

The complaint further alleges that "[] in connection with their efforts to collect money from Plaintiff," the defendants "requested and obtained Plaintiff's consumer report from a credit reporting agency."  *Id.* ¶ 23.   Black asserts that when defendants allegedly "requested, obtained and used Plaintiff's consumer report" there was no permissible purpose for doing so under the FCRA.  *Id.* ¶ 24. The complaint further alleges, in a conclusory manner, that defendants' alleged conduct "constitutes an invasion of Plaintiff's solitude and seclusion which was offensive to any person of ordinary sensibilities" and that it was "an unreasonable intrusion into the private life and matters of Plaintiff."  *Id.* ¶ 39.

Based upon these allegations, Black purports to assert claims against defendants for violations of the FDCPA (Count One); violations of the FCRA (Count Two); and for Invasion of Privacy (Count Three).  Black also asserts in Count Four that MRC and Midland are vicariously liable for Wolpoff's actions, and that MRC is vicariously liable for Midland's conduct.

5

III.   **ARGUMENT**

   A.   **Count One Of The Complaint Must Be Dismissed, Because Black Has Completely Failed To Allege Any Facts That Would Support A Violation Of The FDCPA**

      1.   **Conduct Allegedly Occurring Outside The One-Year Statute Of Limitations Cannot Support An FDCPA Claim**

As an initial matter, the Court should note that, in addition to its substantive deficiencies, the FDCPA claim is largely barred by the statute of limitations. An action to enforce an alleged violation of the FDCPA must be filed within one year after the alleged violation occurred. *See* 15 U.S.C. § 1692k(d). Black filed his complaint on April 11, 2005. He asserts that Midland "failed and/or refused" to report his debt his debt as "paid" after it accepted his payment "on or around October 20, 2003." Complaint ¶¶14-15. This conduct did not occur within one year prior to April 11, 2005, and it therefore cannot support the alleged FDCPA claims.

   In addition, the other acts about which Black complains – the mailing of Midland's August 28, 2003 letter, and Midland's alleged October 2003 acceptance of his payment – both occurred more than one year prior to the filing of the complaint. *See id.* ¶¶13-14. Neither act can form the basis for Black's claim that Defendants violated the FDCPA, *see id.* ¶¶26(a, f), because Black did not file his complaint within one year after they allegedly occurred. *See* 15 U.S.C. §

1692k(d); *Agosta v. Inovision, Inc.*, 2003 WL 22999213, at *6 (E.D. Penn. 2003) ("The limitations period runs from the date of the alleged violation and not the date on which plaintiff became aware of it.").

The only act that allegedly occurred within one year prior to the filing of the complaint was the mailing of the May 4, 2004 letter from Wolpoff.   *Id.* ¶17, Ex. 2. As explained below, however, that letter does not violate the FDCPA.

> **2.     The Court Evaluates The Purported FDCPA Claim Using The Unsophisticated Debtor Standard**

The purpose of the FDCPA is to prevent "abusive, deceptive, and unfair debt collection practices," while ensuring that "those collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  *See* 15 U.S.C. § 1692(a), (e).  The FDCPA was not designed to prevent routine debt collection activity by ethical debt collectors.  Rather, it was meant to protect against abusive debt collection practices which would likely disrupt a debtor's life. *See Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997)).

To determine whether Wolpoff's letter violates the FDCPA, the Court must examine the letter under the so-called "unsophisticated debtor" standard.  *See Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005).  Although

this hypothetical "unsophisticated debtor" has been described as "uninformed, naive, or trusting," he is also said to possess a "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences."  *Id; see also Pettit*, 211 F.3d at 1060 (stating that the unsophisticated debtor "is wise enough to read collection notices with added care" and possesses "reasonable intelligence").

Accordingly, courts must reject FDCPA claims that are based upon "unrealistic, peculiar, bizarre and idiosyncratic interpretations of collection letters."  *Durkin*, 406 F.3d at 414 (citations omitted); *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000) ("The Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it.").  Moreover, because the unsophisticated debtor standard is an objective one, a mere claim of confusion by the plaintiff is not enough.  Rather,

> [A] plaintiff must show that the challenged language of the letters unacceptably increases the level of confusion.  Under this standard, a plaintiff's anecdotal proclamations of being confused will not suffice:  a collection letter cannot be confusing as a matter of law or fact unless a significant fraction of the population would be similarly misled.

*Durkin*, 406 F.3d at 415 (citations, internal quotation marks omitted).  Thus, the "unsophisticated debtor" standard incorporates "an objective element of reasonableness," which shields debt collectors from liability for "unrealistic or

peculiar interpretations of collection letters."  *See Gammon v. GC Servs.*, 27 F.3d 1254, 1257 (7th Cir. 1994).

The Court may find as a matter of law that the language of a collection letter would not confuse the unsophisticated debtor.  *See Jang v. AM Miller*, 122 F.3d 480, 484 (7th Cir. 1997) (affirming district court's dismissal of purported FDCPA class actions under Federal Rule of Civil Procedure 12(b)(6)); *see also Pettit*, 211 F.3d at 1063 (affirming summary judgment for debt collector:  "As a matter of law, the extremely low level of sophistication and the high level of irrationality suggested by Pettit is not the standard for unsophisticated debtors.").

### 3. As A Matter Of Law, The Unsophisticated Debtor Would Not Believe That The May 6, 2004 Letter From Wolpoff Contained An Implied Threat Of Legal Action

Black alleges that Wolpoff violated the FDCPA because its May 6, 2004 letter led him to believe that Wolpoff employed attorneys who were licensed to practice in Indiana, that Wolpoff had the "right and legal ability" to file suit in Indiana, and that Wolpoff intended to file suit against him.  *See* Complaint ¶ 26. But these allegations are insufficient to state an FDCPA claim because, as a matter of law, the language of the May 6, 2004 letter does not state that Wolpoff employs Indiana attorneys, nor does the letter threaten or imply to the unsophisticated debtor that Wolpoff will take legal action in Indiana with respect to the debt.  The motion to dismiss should be granted.

9

Nothing in the FDCPA prohibits an attorney who is not licensed to practice law in Indiana from sending a collection letter to an Indiana debtor.  Indeed, in a case with remarkably similar facts, *Sturdevant v. Jolas*, 942 F. Supp. 2d 426 (W.D. Wis. 1996), the court rejected as "frivolous" the claim that a collection letter sent by an attorney who was not licensed to practice law in Wisconsin violated the Act. *Id*. at 430.  The *Sturdevant* court first rejected the plaintiff's argument that the letter "threatened a legal action that cannot legally be taken", because the defendant attorney was not a member of the Wisconsin bar:

> This argument is frivolous.   At a minimum, defendants could have retained local counsel in Wisconsin if they chose to pursue collection of this debt in a Wisconsin court.   Defendants could have legally taken any action against plaintiff to collect this debt in Wisconsin.   The fact that defendant Jolas was not a member of the Wisconsin State Bar while attempting to collect a debt in the State of Wisconsin does not constitute a threat of action that cannot legally be taken or an attempt to mislead plaintiff in order to collect the debt.

*Id*.

Next, the *Sturdevant* court rejected the plaintiff's argument that <u>every</u> letter sent by an attorney necessarily contains an implicit threat of litigation:

> This argument is equally frivolous.   If this statement were true, every collection letter from an attorney would be subject to a FDCPA action in order to determine whether the attorney actually intended to take legal action at the time the initial validation notice was sent.   Clearly this was not the intent of Congress when it enacted the FDCPA.

*Id*.

10

The same result was reached by the court in *Velliard v. Mednick*, 24 F.

Supp. 2d 863 (N.D. Ill. 1998), where the plaintiff claimed that a collection letter

addressed from "Richard M. Mednick and Associates" appeared to be written on a

law firm's letterhead, and would likely induce a debtor to pay the debt within the

validation period in order to avoid legal action.  In rejecting this claim, the *Velliard*

court held:

> As to Veillard's § 1692e(5) claim, we find that, as a matter of law, the letter
> does not contain any specific or implied threat that legal action will be taken
> against him.  There is nothing in the letter that refers to legal action and the
> mere inference that legal action could be taken because the letter is on law
> firm letterhead is not enough for § 1692e(5) purposes.

*Id*. at 868 (citation omitted).

Here, as in *Sturdevant* and *Veillard*, there is nothing in the text of the May

6, 2004 letter that suggests that any Wolpoff attorney is licensed to practice law in

Indiana, nor is there any language that states or implies that legal action may be

taken against Black.  The letter simply informs Black that Wolpoff has been

retained by MRC with respect to the debt, and it advises him of his rights to

dispute the debt. *See* Complaint, Ex. 2.  It is irrelevant that Black has alleged that

the letter made *him* believe that Wolpoff employed attorneys licensed to practice

law in Indiana, and that Wolpoff intended to sue him on the debt. *See Durkin*, 406

F.3d at 415 (noting that "a plaintiff's anecdotal proclamations of being confused

11

will not suffice.").   As a matter of law, the letter would not confuse the

unsophisticated debtor, and the claim therefore fails.

> **4.** **Midland's Alleged Failure To Stop Collection Activity Does Not Constitute An Unfair Or Unconscionable Practice Under Section 1692f Of The FDCPA**

Black's section 1692f claim appears to be entirely derivative of his

defective section 1692e claim.   He claims that by sending the May 6, 2004 letter,

"Defendants failed to cease collection efforts after promising to do so," which he

maintains is an "unfair and/or unconscionable" means of collecting or attempting

to collect a debt.   Complaint ¶ 26f.   Black has not alleged a valid section 1692f

claim, however, because that section of the FDCPA does <u>not</u> require collectors to

"cease collection efforts after promising to do so."[3]   The allegation that Midland

---

[3]   In its entirety, section 1692f of the FDCPA provides as follows:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)   The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2)   The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

"failed to stop collection activities" does not describe conduct that is comparable

to the list of activities proscribed by section 1692f of the FDCPA.  *See Spearman*

*v. Tom Wood Pontiac-GMC, Inc.*, 2002 WL 31854892, at *8 (S.D. Ind. Nov. 4,

2002) (opining that "specific examples [listed in § 1692f] give meaning to the

---

    (3)    The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

    (4)    Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

    (5)    Causing charges to be made to any person for communications by concealment of the true purpose of the communication.  Such charges include, but are not limited to, collect telephone calls and collect telegram fees.

    (6)    Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –

        (A)    there is no present right to possession of the property claimed as collateral through an enforceable security interest; or

        (B)    there is no present intention to take possession of the property;  or

        (C)    the property is exempt by law from such dispossession or disablement.

    (7)    Communicating with a consumer regarding a debt by postcard.

    (8)    Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that s/he is in the debt collection business.

15 U.S.C. § 1692f(1-8).

general application" of section 1692f, and granting summary judgment for defendant because the collection letter's requirement that disputes must be in writing "is nothing like the conduct specifically prescribed by § 1692f").  Black has not alleged any facts suggesting why sending the letter should be considered an "unfair" or "unconscionable" means of collecting a debt.

Here, Black has essentially argued that Defendants' alleged violation of section 1692e of the FDCPA also constitutes a violation of section 1692f.  But the two sections cover different practices, and an alleged violation of one section does not necessarily support a claim for violation of the other.  In any event, as explained above, the section 1692e claim fails, and since Black has not alleged any facts describing any "unfair" or "unconscionable" collection practice, the section 1692f claim must also be dismissed.

### 5.   Midland and MRC Are Not Vicariously Liable For Wolpoff's Alleged FDCPA Violations

In Count IV, Black alleges that "As the principal of its agents," MRC and Midland are liable for "the unlawful acts of W&A and Cherkis" and that "As the principal of [Midland], MRC is liable" for "the unlawful acts of [Midland]." Complaint ¶¶ 42-43.  Given Black's failure to state a claim under the FDCPA, as explained above, there are no unlawful actions for which to hold Midland and

MRC liable.  In any event, his conclusory allegations of vicarious liability are insufficient.

The FDCPA is silent as to vicarious liability.  *See Newman v. Checkrite Cal., Inc.*, 912 F. Supp. 1354, 1370 (E.D. Cal. 1995).  Furthermore, the Seventh Circuit has never held that an alleged debt collector may be vicariously liable for its debt-collector attorney's alleged violations of the FDCPA, although it has explained that other circuits have "utilized the principle of vicarious liability" in FDCPA cases.  *See Pettit*, 211 F.3d at 1059 (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994)).

Even if Midland and MRC could be held vicariously liable for violations of the FDCPA, Black has utterly failed to identify any theory by which vicarious liability would attach.  *See Newman*, 912 F. Supp. at 1370 (listing possible theories under which debt collector could be held vicariously liable for attorneys' acts, including actual authority, apparent authority and ratification).  And even if Black had identified a theory, he has not alleged facts sufficient to support a claim.  *See, e.g., id.* at 1370-71 (explaining elements of each theory).  The claim must fail.

15

**B.**    **Count Two Of The Complaint Must Be Dismissed Because Black Has Not Alleged Facts Sufficient To Constitute A Violation Of The FCRA**

**1.**    **There Is No Private Right of Action Under The FCRA Based On Midland's Alleged Failure To Report Accurate Information To A Credit Reporting Agency**

Black alleges that, although he "accepted the offer extended by [Midland]" by "tendering" payment, Midland failed to keep its promise to "notify the credit bureaus that the debt was 'paid' and immediately stop collection activity."  *See* Complaint ¶¶ 14-15, Ex. 1.  He insists that Midland "reported and/or continued to report the debt to one or more consumer reporting agencies regarding Plaintiff, all the while knowing that Plaintiff did not owe same."  *See id.* ¶31(a).  According to Black, this alleged conduct amounts to a wilful or negligent failure to comply with the FCRA, in violation of 15 U.S.C. §§ 1681n and 1681o, respectively.  *See id.* ¶¶ 32-33, 36-37.  Even if the Court ignores the fact that Black's payment was late and he therefore failed to trigger any alleged obligation to report the debt as "Paid", this claim still must fail as a matter of law.

The plain language of the FCRA precludes a consumer from suing a furnisher for alleged violations of a furnisher's duty to accurately report information to credit reporting agencies.  *See* 15 U.S.C. § 1681s-2(c), (d).  Accordingly, courts have uniformly held that no private right of action exists to

16

enforce this duty. *See, e.g., Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002); *Kane v. Guaranty Residential Lending, Inc.*, 2005 WL 1153623, at *4 (E.D.N.Y. May 16, 2005); *Robinson v. American Honda Fin. Corp.*, 2005 WL 1009568, at *1 (W.D. Tenn. Mar. 31, 2005); *Elmore v. North Fork Bancorp.*, 325 F. Supp. 2d 336, 339 (S.D.N.Y. 2004); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 782-83 (W.D. Ky. 2003); *Aklagi v. Nationscredit Fin. Servs. Corp.*, 196 F. Supp. 2d 1186, 1192 (D. Kan. 2002).[4]

In *Nelson*, the plaintiff claimed a bank had violated the FCRA, because credit reporting agencies were inaccurately reporting that his loan with the bank had been discharged in bankruptcy. *See* 282 F.3d at 1058. The Ninth Circuit acknowledged that furnishers of information <u>do</u> have an affirmative duty to report complete and accurate information to credit reporting agencies under section 1681s-2(a) of the FCRA. *Id.* at 1059. The court recognized, however, that two other subsections of the FCRA (sections 1681s-2(c) and 1681s-2(d)), expressly provide that there is <u>no</u> private right of action to enforce the obligations established by section 1681s-2(a) of the FCRA. *Id.* Rather, a furnisher's duties under section

---

[4] Other courts, while not squarely addressing the issue, have recognized this ban on private actions under section 1681s-2(a). *See Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002); *Carriere v. Proponent Fed. Credit Union*, 2004 WL 1638250, at *3 n.2 (W.D. La. July 12, 2004); *Gordon v. Greenpoint Credit*, 266 F. Supp. 2d 1007, 1010 (S.D. Iowa 2003).

1681s-2(a) of the FCRA must be exclusively enforced by the federal and state officials identified in the statute.  *Id*.

Here, as in *Nelson*, Black's allegations fall squarely within the duties imposed by section 1681s-2(a) of the FCRA.  This Court, like all the other courts that have addressed this issue, should rule that there is no private right of action to enforce Midland's section 1681s-2(a) duties.  *See Nelson*, 282 F. 3d at 1059.[5]  As a matter of law, Black cannot bring a claim against Midland under section 1681s-2(a) of the FCRA, and his FCRA claim must fail.

> **2.      Black Has Not Plead Facts Sufficient To State A Claim Against Midland For Failure To Investigate A Dispute Under Section 1681s-2(b)**

The FCRA does allow for private suits under section 1681s-2(b), which establishes a furnisher's duties of investigation upon receiving notice from a *consumer reporting agency* that a consumer disputes the completeness or accuracy of information provided by the furnisher.  *See Nelson*, 282 F. 3d at 1059-60.[6]  The

---

[5]  *See Kane*, 2005 WL 1153623 at *4; *Robinson,* 2005 WL 1009568 at *1; *Elmore*, 325 F. Supp. 2d at 339; *Stafford*, 262 F. Supp. 2d at 782-83; *Aklagi*, 196 F. Supp. 2d at 1192.

[6]  *See also Kane,* 2005 WL 1153623 at *5; *Carriere*, 2004 WL 1638250 at **3-4; *Gordon*, 266 F. Supp. 2d at 1010-12; *Stafford*, 262 F. Supp. 2d at 783; *Aklagi*, 196 F. Supp. 2d at 1193.  Other courts, while not addressing the issue, have assumed or recognized a private action can be brought to enforce a violation of section 1681s-2(b). *See Young*, 294 F.3d at 639; *Robinson*, 2005 WL 1009568 at *2; *Elmore*, 325 F. Supp. 2d at 339-40.

*Nelson* court recognized that the furnisher's duties of investigation are only

triggered when it receives notice of the dispute from the consumer reporting

agency.  *Id.* at 1060.  Thus, it is not sufficient for Black to allege that he notified

Midland about his alleged dispute.  Rather, to state a claim under section 1681s-

2(b), he must allege, *inter alia*, that Midland received notice from a consumer

reporting agency.  *See* 15 U.S.C. § 1681s-2(b); *Peasley v. Verizon Wireless (VAW)*

*LLC*, 364 F. Supp. 2d 1198, 1202 (S.D. Cal. 2005) (plain language of statute

provides that violation "only occurs where the furnisher of information has been

contacted by a credit reporting agency."); *Elmore*, 325 F. Supp. 2d at 340 (no

claim where plaintiff did not allege furnisher "violated the duties imposed upon it

after receiving notice of the existence of a dispute from a credit reporting

agency"); *Gonzales v. Ocwen Fin. Servs.*, 2003 WL 23939563 at *3 (N.D. Cal.

Dec. 2, 2003) (dismissal proper where no allegation defendant "received notice of

his dispute from a consumer reporting agency"); *Stafford*, 262 F. Supp. 2d at 784

("It does not appear that the [furnisher] received notice from a consumer reporting

agency, in which case the [§ 1681s-2(b)] claim would be dismissed.").

Here, Black has not alleged that any defendant received notice from a

consumer reporting agency that he disputed information Midland had furnished to

the agency.  As a matter of law, he has not alleged a claim under section 1681s-

2(b) of the FCRA.  *See Elmore*, 325 F. Supp. 2d at 340; *Gonzales*, 2003 WL

19

23939563, at *3; *see also Peasley*, 364 F. Supp. 2d at 1199-00, 1202 (dismissing

section 1681s-2(b) claim where plaintiff contacted furnisher but did not allege

furnisher "was ever notified by a credit reporting agency" of the dispute).

### 3.   The FCRA Claim Against Wolpoff Fails, Because Wolpoff Had A Permissible Purpose For Obtaining Black's Credit Information

Black claims the defendants violated the FCRA because "in connection

with its effort to collect the balance of the debt" the defendants "requested,

obtained and used Plaintiff's consumer report from one or more consumer

reporting agencies."  Complaint ¶¶18, 31(b), 34-36.  To prevail on this claim,

however, Black must establish that Defendants lacked a permissible purpose for

accessing his credit information.  He cannot plausibly establish this crucial fact,

however, because his own allegations demonstrate that if defendants pulled his

credit report, they did so in connection with attempting to collect a debt, which is

a permissible purpose as a matter of law.  His FCRA claims must be dismissed.[7]

---

[7] Defendants note that it is unclear from the complaint who Black seeks to hold liable for a violation of section 1681q.  The Act bars "a natural person from obtaining a consumer report under false pretenses or knowingly without a permissible purpose."  *See* 15 U.S.C. § 1681n(a)(1)(B).  On the one hand, Black specifically alleges that Defendant "Cherkis is a 'natural persons' [sic] as that term is defined under the FCRA."  Complaint ¶ 9.  On the other hand, he alleges that "W&A requested, obtained and used" his consumer report.  *Id.*, ¶ 31(b).  Wolpoff does not concede that it is a "natural person" that may be held liable under section 1681n(a)(1)(B).  Wolpoff is a limited liability partnership, not a "natural person," and hence is immune from liability under this provision.  *See Phillips v. Grendahl*, 312 F.3d 357, 371 (8th Cir. 2002) (limiting

To state a claim for willfully or negligently obtaining a credit report in violation of the FCRA, Black must allege, *inter alia*, that Wolpoff used or obtained his credit report <u>without</u> a permissible statutory purpose.  *See Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002); *see also* 15 U.S.C. § 1681b(f) (describing conditions under which one may use or obtain report).  Similarly, to state a false pretenses claim under section 1681q, Black must allege, *inter alia*, that Wolpoff knowingly and willfully obtained his consumer report for an <u>impermissible</u> statutory purpose, and failed to disclose to the credit reporting agency the true motive for obtaining the report.  *See Duncan v. Handmaker*, 149 F.3d 424, 426 (6th Cir. 1998).[8]

The existence of a permissible purpose is a complete defense to a claim for alleged willful violation of the FCRA, as well as to a false pretenses claim.  *See Phillips*, 312 F.3d at 370; *Edge v. Professional Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 117 (E.D.N.Y. 1999).  In other words, "[w]here a permissible purpose for obtaining the credit information is demonstrated, then, as a matter of law, the

---

discussion of liability under § 1681n(a)(1)(B) to claim against individual defendant).  The Court, however, need not address this issue for purposes of deciding this motion, because Black's "permissible purpose" claim fails as a matter of law for the other reasons stated herein.

[8]  Black would also need to allege Wolpoff acted "willfully and purposefully 'with a motivation to injure.'"  *See Duncan*, 149 F.3d at 426.

21

information cannot have been obtained under false pretenses." *Perretta v. Capital Acquisitions & Management Co.*, 2003 WL 21383757, at *5 (N.D. Cal. May 5, 2003). Whether a permissible purpose exists is a question of law. *See Breese v. Triadvantage Credit Servs., Inc.*, 2005 WL 300074, at *2 (D. Minn. Feb. 2, 2005); *Edge*, 64 F. Supp. 2d at 117.

Congress set forth six permissible purposes for obtaining information from a consumer report. The relevant section that provide a complete defense to Black's claims here states that "a consumer reporting agency" may "furnish a consumer report . . . [t]o a person[9] which it has reason to believe":

> (A)    intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, *or review or collection of an account of, the consumer.*

*See* 15 U.S.C. § 1681b(a)(3)(A) (emphasis added). The *Perretta* court, as well as a number of others, have held that "[u]nder section 1681b(a)(3)(A), a party is permitted to obtain an individual's credit information in connection with the collection of a debt." 2003 WL 21383757, at * 5; *accord Stonehart v. Rosenthal*, 2001 WL 910771, at **3-4 (S.D.N.Y. Aug. 13, 2001) (debt collection attorney had permissible purpose under section 1681b for obtaining plaintiff's credit report);

---

[9] A "person" is "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

*Edge*, 64 F. Supp. 2d at 118 (collection agency had permissible purpose under

section 1681b for obtaining plaintiff's credit report); *Morgovsky v. Creditors*

*Collection Serv. of San Francisco*, 1995 WL 316970, at *4 (N.D. Cal. May 16,

1995) (defendants who "intended to use the [consumer report] to collect a debt

from plaintiffs" had permissible purpose for obtaining report, and thus did not

obtain it under false pretenses).

> In *Perretta*, the plaintiff alleged that:

> [D]efendant 'is a domestic corporation doing business collecting consumer
> debts,' that 'the principal purpose of defendants is the collection of debts
> using the mails and telephone and [that] defendants regularly attempt to
> collect debts alleged to be due another.' . . . Further, the letter which
> defendant sent plaintiff . . . plainly states that defendant was attempting to
> collect a debt from plaintiff.

2003 WL 21383757, at *5.  The *Perretta* court concluded that "[s]ince it appears

that if in fact defendant obtained plaintiff's consumer report it was in connection

with an effort to collect a debt, plaintiff's FCRA claim fails."  *Id.*

> Here, as in *Perretta*, Black alleges that Wolpoff "is a law firm and has been

and continues to be in the business of collecting debts," and that "all of the

Defendants are . . . 'debt collectors.'"  Complaint ¶ 8.[10]  And like the letter in

---

[10]  Although Black does not allege that defendants Midland Credit Management,
Inc. and MRC Receivables Corporation violated the FCRA, he similarly alleges that they
are "engaged in the business of collecting consumer debt" and that they are "'debt
collector[s],'" within the meaning of the FDCPA.  Complaint ¶¶ 3-4.

*Perretta*, the Wolpoff letter refers to a debt and explicitly states "This is an attempt by a debt collector to collect a debt . . . ."  Complaint, Ex. 2.[11]  In fact, the defendants' permissible purpose appears on the face of the complaint, since Black alleges that, "in connection with its effort to collect the balance of the debt," W&A "requested, obtained and used [his] consumer report."  *Id.* ¶18 (emphasis added); *see also id.* ¶23 ("In connection with their efforts to collect money from Plaintiff as hereinabove stated, Defendants requested and obtained Plaintiff's consumer report from a consumer reporting agency . . . .") (emphasis added).

   Simply put, Black has "pled himself out of court."  *See Lekas v. Briley*, 405 F.3d 602, 613-14 (7th Cir. 2005); *see also Centers v. Centennial Mortgage*, 398 F.3d 930, 933 (7th Cir. 2005) (documents attached to complaint trump complaint's allegations and may indicate plaintiff is not entitled to judgment).  The inescapable conclusion of these allegations and the language in the Wolpoff letter is that, if Wolpoff obtained Black's consumer report, it did so in connection with the collection of a debt, which is a permissible purpose under the Act.  *See* 15 U.S.C. § 1681b(a)(3)(A).  This is a complete defense to Black's FCRA claims against Wolpoff.  *See Phillips*, 312 F.3d at 370; *Edge*, 64 F. Supp. 2d at 117.  They must therefore be dismissed.

---

   [11] In its letter, Midland explains that it is a "debt collection company."  Complaint, Ex. 1.

24

### 4.      Midland And MRC Are Not Vicariously Liable For Wolpoff's Alleged Violations Of The FCRA

In light of Plaintiff's failure to state a claim under the FCRA, as explained above, there are no unlawful actions for which to hold Midland and MRC liable. In any event, Plaintiff's conclusory allegations are insufficient to support a claim of vicarious liability.

Like the FDCPA, the FCRA does not address vicarious liability.  *See Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1995); *Smith v. Sears, Roebuck and Co.*, 276 F. Supp. 2d 603, 606 (S.D. Miss. 2003).  Nor has the Seventh Circuit held a creditor may be held vicariously liable for the alleged FCRA violations of its collection attorney.[12]

Even if Midland and MRC could be held vicariously liable for Wolpoff's alleged FCRA violations, Black has identified no theory under which vicarious liability would attach and has alleged no facts sufficient to support such a theory. *See Jones*, 144 F.3d at 965 (listing possible theories and explaining elements of each theory under which employer could be held liable for employee's FCRA

---

[12] While some courts have held that an <u>employer</u> may be held vicariously liable for its <u>employee's</u> violations of the FCRA, *see, e.g., Jones*, 144 F.3d at 965; *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987), other courts have refused to do so, *see Smith*, 276 F. Supp. 2d at 609-10; *Kodrick v. Ferguson*, 54 F. Supp. 2d 788 (N.D. Ill. 1999), and no court has applied vicarious liability as Plaintiff seeks to in this action.

violation, including express or implied authority, respondeat superior and apparent

authority).  The claim must fail.

C.    The "Invasion Of Privacy" Claim Must Be Dismissed, Because
Black Has Not Alleged An Intrusion Into His Physical Space

Black asserts, in a wholly conclusory manner, that the "Defendants' conduct

. . . constituted an invasion of [his] solitude and seclusion which was offensive to

any person of ordinary sensibilities.  Said invasion was an unreasonable intrusion

into the private life and matters of Plaintiff."  Complaint ¶ 39.  Since Black has not

alleged any facts which could support an invasion of privacy claim, this claim must

be dismissed as well.

Black never identifies the legal basis for his invasion of privacy claim.

Indiana recognizes four types of invasion of privacy: "appropriation, intrusion,

public disclosure of private facts, and false light in the public eye."  *Cullison v.*

*Medley*, 570 N.E.2d 27, 31 (Ind. 1991).  Construed liberally, Black appears to

attempt to plead a claim for intrusion.  "When the invasion of a plaintiff's right to

privacy takes the form of intrusion, it consists of an intrusion upon the plaintiff's

physical solitude or seclusion *as by invading his home or conducting an illegal*

*search.*"  *Id.* (emphasis added).  In *Cullison*, the Indiana Supreme Court concluded

that where a family had entered the plaintiff's home, called him names and

26

threatened him, these events "may constitute an intrusive invasion of [plaintiff's] right of privacy." *Id.* at 31.

Black's complaint is devoid of any facts suggesting Defendants intruded into his physical space. Instead, Black merely asserts that he "feared" and "was led to believe" that he was going to be sued. Complaint ¶¶ 20-21. Black has completely failed to state a claim for invasion of privacy. *Cf. Phillips v. Grendahl*, 312 F.3d 357, 371-73 (8th Cir. 2002) (no invasion of privacy rights where defendants obtained report showing plaintiff's social security number, trade lines and child support order). Accordingly, the claim must be dismissed.

## IV.  <u>CONCLUSION</u>

Assuming that all facts as alleged in the complaint are true, he has failed as a matter of law to plead a viable claim against the defendants. All of plaintiff's claims fail. For each of the forgoing reasons, the defendants respectfully request that this Court issue an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the complaint for failure to allege facts upon which relief may be granted.

In the event that, as defendants anticipate, Black does not indicate in his opposition papers that he can amend his pleading to state additional facts that are sufficient to support a viable claim, defendants ask that the complaint be dismissed without leave to amend.

27

WINEBERG, SIMMONDS & NARITA LLP


_____/s/_____
Tomio B. Narita (SBN 156576)
Attorney for Defendants



WINEBERG, SIMMONDS & NARITA LLP
44 Montgomery St., Suite 3880
San Francisco, CA 94104
Tel.: (415) 352-2200
Fax: (415) 352-2222

RILEY BENNETT & EGLOFF, LLP
141 East Washington St.
Fourth Floor
Indianapolis, IN 46204
Tel.: (317) 636-8000
Fax: (317) 636-8027

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2005, a copy of the foregoing

Memorandum of Points and Authorities In Support of Defendants' Motion to

Dismiss Complaint was filed.  Notice of this filing will be sent by operation of the

Court's Electronic filing system or by U.S. Mail, postage pre-paid, to the

following:


David B. Mour
BOROWITZ & GOLDSMITH, PLC
401 W. Main Street, Suite 1100
Louisville, KY 40202


_____/s/_____

Tomio B. Narita